664

M. St. George Osborne, Plaintiff, *v.* Banco Aleman-Antioqueno and Bohemian Union Bank, Defendants.

Municipal Court of New York, Borough of Manhattan, Ninth District,
May 20, 1941.

*Geist & Netter* [*Morris A. Marks* of counsel], for the plaintiff.

*McCanliss & Early* [*L. B. Wardrop* of counsel], for the defendant Banco Aleman-Antioqueno.

Genung, J. The action was instituted by the plaintiff in this court and a warrant of attachment was issued against the property of the defendant on the ground that it was a foreign corporation organized under the laws of Colombia, South America. The complaint, verified on January 2, 1941, the same day on which the warrant was issued, alleges two causes of action, one against the defendant and one against Bohemian Union Bank. The first cause of action alleges that the defendant Banco Aleman-Antioqueno collected and received as agent for Edmund Traub certain sums of money due him from various firms, persons or corporations, the sum of $874.49 over and above all commissions and other charges to which the defendant was entitled, and that the defendant has not paid the said sum and that the plaintiff herein is the assignee of the said claim. The second cause of action is directed against the defendant Bohemian Union Bank, which is not before the court on these motions. However, the statements set forth in this cause of action are repeated in the moving affidavits, which show that the defendant thereafter issued its check or draft for $874.49 on the Guaranty Trust Company of New York payable to the order

of Edmund Traub, and sent this check or draft addressed to Edward Traub in Prague, Czechoslovakia, and the said check or draft was presented to the Guaranty Trust Company of New York but payment thereof was refused in view of the fact that it did not bear the personal indorsement of Edmund Traub.

It appears further that shortly after the dispatch of the check Edmund Traub cabled to defendant, " Please stop payment both checks Prague; letter follows," but that the defendant replied that it could not stop payment but would advise the Guaranty Trust Company of New York not to make payment unless the check were actually indorsed by Edmund Traub, and also that they had cabled to the address of Edmund Traub's firm in Prague requesting that the check be sent to him at his London address. The check, as aforesaid, was thereafter presented but payment was refused. It appears further that Edmund Traub, at some time prior to the letters above referred to, had assigned all claims payable to him to the Finsbury Leather Co., Ltd., 91 Four street, E. C. 2, London, England, which said company, together with Edmund Traub, executed an assignment of this claim to the plaintiff, a resident of New York.

The answer of the defendant denies various of the allegations of the complaint and sets up four affirmative defenses: (1) That it received from the firm of Edmund Traub in Czechoslovakia certain items for collection, collected the same and paid the net proceeds thereof to the firm of Edmund Traub in Czechoslovakia; (2) that the plaintiff was not the real party in interest; that the real party in interest was the Finsbury Leather Co., Ltd., of London, to whom Edmund Traub had assigned his rights; (3) that the defendant's alleged assignor is a non-resident of the United States and that the defendant is a foreign corporation; that the contract was made wholly without the United States and that this court should decline to take jurisdiction of the subject-matter of the action; (4) that pursuant to the laws of Colombia it owes no duty to the plaintiff or plaintiff's assignor, or to the firm Edmund Traub.

The plaintiff herein has moved for summary judgment, which the defendant opposes, and the defendant has moved pursuant to section 51-a of the Civil Practice Act for leave to give notice of the pendency of this action to alleged adverse claimants said to be one Edmund Traub of Prague, Czechoslovakia, and Finsbury Leather Co., Ltd., of London, England, which motion plaintiff opposes.

(Plaintiff's motion for summary judgment is granted but portion of opinion relating thereto is omitted.)

There remains to be considered the defendant's motion under section 51-a. The defendant claims that it is in danger of double liability by reason of adverse claims made to the funds collected by it. It is conceded that the defendant acted as agent for one Edmund Traub, doing business in Prague, Czechoslovakia. It is contended by the defendant that two other claimants exist, (1) the firm of Edmund Traub in Czechoslovakia as distinct from the individual Edmund Traub, and (2) the Finsbury Leather Co., Ltd. As to this latter the assertion by defendant seems wholly unfounded in fact. It is based solely upon the cable from Edmund Traub in London, stating in part, " Have sold to Finsbury Leather Co., Ltd., all payments to be made to this firm." No evidence is presented, however, that Finsbury Leather Co., Ltd., has ever made any claim in its own right and the possibility of its doing so is wholly negatived by the assignments presented to this court on behalf of the plaintiff herein, showing it to be the assignee of the Finsbury Leather Co., Ltd., as well as the assignee of any rights of Edmund Traub. It thus appears that whatever claims were at any time vested in the Finsbury Leather Co., Ltd., are now before this court.

The other alleged claimant is the firm of Edmund Traub, as distinguished from Edmund Traub, individually. No proof is shown that there is a distinction between the individual and the firm. In fact, all of the proof presented is contrary to that fact. The certificate presented clearly indicates that Edmund Traub is an individual doing business under his own name. The letter of demand, on which the defendant relies to indicate an adverse claim, was not signed by Edmund Traub personally, but in the name of Edmund Traub by some other person. The certificate above mentioned indicates that Edmund Traub had authorized persons to sign for him in the course of his business, but this authorization or power of attorney was clearly revoked both by letters and cables of the said Edmund Traub. The alleged adverse claim then between the firm of Edmund Traub and Edmund Traub as an individual amounts merely to this: That someone who purports to be the agent for, or have authority from, Edmund Traub to receive money for Edmund Traub claims adversely to Edmund Traub. It is elementary that an agent may not claim against his principal. It is also clear that the authority of an agent depends upon the principal and that his authority ceased to exist upon the revocation or repudiation of this authority by the principal.

The fact that the agent of Edmund Traub in writing from Prague, Czechoslovakia, writes in the first person over the name of Edmund Traub may give the appearance of a direction or order from the

said Edmund Traub, but it is clear from the papers before this court that the letter was not signed by Edmund Traub but purports to be signed for him. The letter itself purporting to set forth the reasons why the " firm of Edmund Traub " must be paid and paid in Czechoslovakia only, should be considered. This letter repeats a cablegram sent on March 30, 1939, the relevant line of which is, " payment must be made to the firm in Prague — Other payments will not be recognized," and then continues, " In accordance with our Foreign Exchange Control Laws the exporter is under the obligation to remit for every exportation of merchandise the corresponding amount in foreign exchange to our National Bank. Also the owners of firms and other authorized persons are not allowed in this connection to give any other instructions. This was confirmed to me by the authorities before I sent you my answer cable reading as above."

It is not necessary to speculate whether or not such laws, rules or regulations as those mentioned in this letter and under the previous cable do exist and if so whether or not they were imposed upon Czechoslovakia by military authority or existed prior to the time when Czechoslovakia ceased to be an independent nation, since an analysis of the letter shows that the facts set forth are irrelevant to the question before this court. In effect, this letter advises the debtor of Edmund Traub that Edmund Traub is under a duty to account to some governmental authority for any payment which he may receive and seeks to impose upon this debtor a liability to see to it that said Edmund Traub does not violate the local law under which he had been doing business. It is admitted that the defendant owed Edmund Traub a debt which it is willing to pay. It is difficult to see what liability exists upon this defendant in paying this debt to assure itself the accounting for, and disposition of, this payment is in accordance with the laws which are, by this letter, presumed to govern Edmund Traub in his business relations at the place where he is doing, or formerly did, business. If Edmund Traub be under some duty or obligation to account for this payment made to him in some manner his failure to do so would at most be but a breach of the local law at his place of business. What fines or other penalties could be assessed against the said Edmund Traub would appear clearly to grow out of a relation existing between the governmental authority promulgating such rules and regulations and the said Edmund Traub. The debt is due to Edmund Traub and is paid when he receives it. His subsequent misuse of the funds under the said law, rule or regulation cannot revive the debt in the hands of Edmund Traub, nor

in the hands of any one else. It is not claimed by any one that Edmund Traub is insolvent; that any receiver has been appointed; or any bankruptcy proceedings instituted, which would make payment to Edmund Traub a nullity for the purpose of satisfying the debt. It would be as reasonable to require a debtor to be liable for the creditor's failure to pay excise, license or income taxes as it would be to require him to supervise the disposition after payment to him of an admittedly existing debt.

Section 51-a was passed by the Legislature in 1939 (Laws of 1939, chap. 805) and became the law of this State on June 8th of that year. The enactment of this law was to meet a danger to residents of this State and others who sought the protection of its courts, in a case where two claims were made to the same debt, and the debtor, while acknowledging his debt, as the defendant did by its actions herein, cannot tell to which of the two he may safely pay and be relieved of the danger of thereafter being forced to pay to the other claimant, and cannot invoke the protection of interpleader because of lack of jurisdiction of one or more of the claimants. It would be unfortunate indeed if the efficacy of this salutary law of protection to business men should be in any wise rendered less effective by denial of its protection to any business man met with this difficulty. If any doubt were present as to whether or not two claims did in fact exist this court should give protection under the act to the person who is willing to pay but has honest doubt as to which of two or more claimants it should pay. Doubtless in numerous cases a defendant who is sued by an alleged creditor and is met with other claims or demands for the payment of the same debt by a claimant not within the jurisdiction of the court may not have available all of the facts upon which these various claims and demands may rest. The debtor himself and the court may not be able to determine whether or not there is any legal basis for some of the claims asserted. In such circumstances the court should resolve any doubt in favor of the honest debtor who seeks the court's protection and grant to him the protection afforded by the statute even though, at some later time, it should appear that some of the claims are in fact groundless either in fact or in law. However, the law does not preclude the court from examining the facts before it and when, as here, it appears that the adverse claim is by an agent whose authority has been revoked as against the principal and there is no indication that the plaintiff is not entitled to receive the money sued for, the court should not project the litigation unnecessarily since to do so would be to deprive the plaintiff, uselessly, of his right for a period of a year without any corresponding advantage to the defendant.

A careful consideration of the motions which have been decided under section 51-a, most of which granted to the defendant the protection sought, but some of which, on the facts before the court, denied this relief, and comments made by various text writers, leaves no room for doubt as to the intent and proper interpretation of this act. (*Klein* v. *Freund*, 258 App. Div. 783; *Perutz* v. *Guaranty*, Id. 956; *Anninger* v. *Hohenberg*, 172 Misc. 1046; *Loeb* v. *Bank of Manhattan Co.*, 18 N. Y. Supp. [2d] 497; *Reiss* v. *S. S. Steiner*, N. Y. L. J. Aug. 11, 1939, p. 347; *Lieberman* v. *Parsons & Whittemore, Inc.*, Id. Sept. 28, 1939, p. 855; *Krafft* v. *Stanton*, Id. Aug. 9, 1939, p. 328. See, also, 14 St. John's L. Rev. p. 61; 39 Col. L. Rev. p. 1061.)

The motion by the defendant for leave to give notice pursuant to section 51-a of the Civil Practice Act to Finsbury Leather Co., Ltd., and to Edmund Traub, Prague, Czechoslovakia, is, therefore, denied.